IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| KELLY M. MARSHALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:13-CV-00954-JO |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of | ) | OPINION AND ORDER |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

JONES, J.,

Plaintiff Kelly Marshall appeals the Commissioner's decision to deny her concurrent applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision is AFFIRMED.

## PRIOR PROCEEDINGS

Marshall filed her applications in February 2008, alleging disability due to a host of physical and mental problems, including anxiety, bi-polar disorder, and post-traumatic stress syndrome. Admin. R. 193-202. She said she became disabled in April 2005, while in prison for felony drug charges. Admin. R. 28, 476.

The Administrative Law Judge (ALJ) applied the five-step process outlined in 20 C.F.R. sections 404.1520 and 416.920 to determine whether Marshall is disabled for the purposes of the Social Security Act. Admin. R. 21-22. The ALJ determined Marshall had a number of impairments that affected her ability to work, but did not meet the severity criteria of any of the presumptively disabling impairments listed in the regulations. Admin. R. 22, 25. The ALJ found Marshall possessed the residual functioning capacity (RFC) to perform medium work, meaning she could stand or walk for up to six hours in a normal workday and lift up to twenty-five pounds frequently. Admin. R. 27. The ALJ found that Marshall could perform only simple, routine, repetitive tasks requiring a low level of reasoning, little contact with coworkers, and no contact with the public. Admin. R. 27.

Drawing support from a vocational expert's (VE) testimony, the ALJ concluded that Marshall's RFC precluded her former occupations as a teaching aide, bakery worker, and kitchen worker. Admin. R. 45, 128, 222. However, the ALJ found Marshall's RFC did not preclude occupations such as laundry laborer, window cleaner, and hand packager, representing thousands of jobs state-wide and nationally. Admin. R. 46. The ALJ determined that Marshall was not disabled and therefore ineligible for disability insurance or supplemental social security. Admin. R. 46.

## STANDARD OF REVIEW

The district court will affirm the ALJ's decision if it is based on the correct legal standard and its factual determinations are supported by substantial evidence from the whole record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). So long as the ALJ's factual findings are supported by reasonable

inferences drawn from the whole record, those findings may not be disturbed even if another plausible interpretation exists. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-1040 (9th Cir. 1995).

## DISCUSSION

### I.     Claims of Error

Marshall alleges the ALJ failed to assess her RFC correctly because he erroneously discredited her subjective statements, assigned insufficient weight to the opinion of a treating physician, failed to account for her deficiencies in concentration, persistence, or pace, and neglected to address her agoraphobic symptoms.

### II.     Adverse Credibility Determination

Marshall contends that the ALJ improperly relied on her history of noncompliance with treatment to find her testimony lacked credibility.   The ALJ reasoned that Marshall would follow treatment if her symptoms were as debilitating as she claimed and that her "complete lack of willingness to engage in meaningful therapy to improve her condition" supported his finding.   Admin. R. 39.   The Commissioner argues that the ALJ's determination was appropriate, and even if his reliance on Marshall's noncompliance were erroneous, it would be harmless because the ALJ relied on other proper grounds in making his credibility determination.

An ALJ engages in a two-step process to assess a claimant's credibility.   First, the ALJ must determine whether the claimant has presented objective medical evidence of impairments that could reasonably be expected to produce the alleged symptoms. Second, unless there is evidence of malingering, the ALJ must employ ordinary techniques of credibility evaluation to assess the claimant's statements regarding the

extent to which her symptoms limit her ability to function. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Smolen v. Chater*, 80 F.3d 1273, 1282-84 (9th Cir. 1996). Here, the ALJ found Marshall's impairments could reasonably be expected to produce her alleged symptoms. Admin. R. 39.    The ALJ did not identify evidence of malingering.

An ALJ may not discredit a claimant's statements without giving specific, clear and convincing reasons. *Molina*, 674 F.3d at 1112. The ALJ discounted Marshall's statements about the limiting effects of her symptoms because he found them uncorroborated by the clinical treatment record and inconsistent with contemporaneous reports of her actual functioning and her reported activities. The ALJ relied on evidence that Marshall tended to exaggerate her symptoms for manipulative aims. In addition, the ALJ found that Marshall made contradictory statements about her street drug use and did not comply with treatment prescribed to alleviate her allegedly disabling symptoms. Admin. R. 28-45.

The ALJ's reasoning is supported by substantial evidence. Regarding Marshall's tendency to exaggerate symptoms, the ALJ drew attention to an examining physician's observation that her anxious demeanor vanished when she walked through the parking lot after he examined her. Admin. R. 39, 723-724. Medical staff at Deschutes County Mental Health and Coffee Creek Correctional Facility observed similar behavior shifts. Admin. R. 39, 448, 772. The ALJ further noted that Marshall used suicidal ideation in attempts to manipulate her therapist and psychiatrist into renewing her prescription for Klonopin. Admin. R. 39, 587. Marshall exaggerated her symptoms on other occasions as well. *E.g.*, Admin. R. 567, 776. Indeed, the treatment notes betray Marshall's

entrenched tendency toward manipulative exaggeration. *See, e.g.*, 567, 577, 587, 597, 776. A claimant's tendency to exaggerate symptoms provides a proper basis to discredit her subjective statements regarding the severity of her symptoms. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The Commissioner stresses that Marshall's subjective claims conflict in many respects with the medical record. For example, the ALJ determined that the objective medical evidence of mild degenerative disc disease did not support the full extent of Marshall's claims of physical disability. Admin. R. 39. Conflicts between a claimant's subjective complaints and the objective medical evidence in the record can constitute specific and substantial reasons that undermine the claimant's credibility. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Although the absence of medical evidence cannot be the sole basis for discrediting subjective testimony, it is a proper factor in the credibility analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ found that Marshall engaged in activities that were inconsistent with her claims of disabling symptoms. For example, she was able to play basketball, do simple physical work, and ride a bicycle. Admin. R. 333, 424, 656. The ALJ reasonably concluded that Marshall would not have been able to engage in such activities if her symptoms were as debilitating as she claimed. *See Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

Marshall challenges the ALJ's adverse credibility determination solely on the grounds that he erroneously relied on her noncompliance with treatment. A claimant's unexplained or inadequately explained failure to seek treatment or follow a prescribed

course of treatment may cast doubt on the claimant's sincerity. When a claimant makes subjective statements about disabling symptoms, but fails to comply with prescribed treatment, an ALJ may reasonably find the subjective statements unjustified or exaggerated. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Tonapetyan*, 242 F.3d at 1147-48; *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1464 (9th Cir. 1995). *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).

If adequately explained, a claimant's failure to comply with treatment will be excused and may not form the basis of the ALJ's adverse credibility determination. *Molina*, 647 F.3d at 1113-1114; Social Security Ruling (SSR) 96-7p 1996 WL 374186 at *7. *See also Regenitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (claimant's failure to seek treatment due to poverty was insufficient grounds to discount credibility). The presence of a mental impairment that could impede compliance with treatment may provide an adequate explanation. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (mental impairment may cause poor judgment in seeking treatment).

Marshall did not produce compelling evidence that her mental impairments caused her failure to comply with treatment, although there were indications suggesting that her unstable housing and environment made compliance difficult and her psychiatrist noted that he did not believe her noncompliance was voluntary. Admin. R. 577.

Even if the ALJ erred by relying on Marshall's noncompliance, however, the error would be harmless in the present circumstances, because the ALJ's adverse

credibility determination is founded on other rational grounds that are supported by substantial evidence. *Tomasetti*, 533 F.3d at 1039; *Batson*, 359 F.3d at 1193.

**III.   Medical Opinion**

Marshall contends the ALJ gave too little evidentiary weight to the opinion of Marc Williams, M.D.  In March 2008, Dr. Williams performed a psychiatric evaluation of Marshall at Deschutes County Mental Health, after her release from prison.  Admin. R. 30-31, 710-12.   Shortly thereafter, she experienced an exacerbation of symptoms coinciding with a positive urine sample showing the presence of methamphetamine and marijuana.  Admin. R. 31, 525, 709.   Dr. Williams then saw Marshall for medication management at infrequent and irregular intervals.

In October 2008, when Dr. Williams next saw Marshall, she was not taking her prescribed medications and he observed she was not doing well.  Admin. R. 32, 708.  In October 2009, Dr. Williams again noted that she was not compliant with her medication regimen.  Admin. R. 33, 579.  In March 2010, Dr. Williams observed that Marshall had discontinued her medications but was obtaining benzodiazapines from other people and taking them in a manner that Dr. Williams found risky.  Dr. Williams noted that Marshall attempted to manipulate him to continue prescribing benzodiazepines.  Admin. R. 34, 577.

In May 2010, Marshall told Dr. Williams she had significant new symptoms, including auditory hallucinations, memory loss, and dissociative symptoms.  Admin. R. 35, 781.  In August 2010, Marshall had no psychotic symptoms, but appeared to be hypervigilant and reported nightmares.  Notably, Marshall's therapist told Dr. Williams that Marshall's symptoms appeared to be more dramatic when he was present, suggesting

Marshall hoped to obtain a prescription for benzodiazapines from him. Admin. R. 36, 772. In December 2011, Dr. Williams noted that Marshall was overly focused on obtaining a medication to cure her anxiety and resistant to learning coping skills that would be of greater long term benefit. Admin. R. 37-38, 757.

In February 2011, Dr. Williams completed a seven-page check box worksheet titled Mental Impairment Questionnaire prepared by Marshall's attorney. Admin. R. 42-43, 741-48. Dr. Williams checked the box indicating Marshall had a very poor capacity to complete an eight-hour work day and forty-hour work week. Admin. R. 744. Dr. Williams also checked the box indicating he believed Marshall's impairments would cause her to miss more than four days of work each month. Admin. R. 745. He wrote that Marshall had high anxiety and frequent anxiety attacks, making contact with other people difficult for her. Admin. R. 743, 747.

The ALJ agreed with Dr. Williams that Marshall had significant limitations in mental function that restricted her to simple, repetitive, routine tasks, with restricted coworker interactions, and no contact with the public. The ALJ gave the opinion expressed in Dr. Williams's questionnaire little weight regarding Marshall's capacity to complete a normal full time work schedule without excessive absenteeism. Admin. R. 43.

The weight given to the opinion of a physician depends, in part, on his or her opportunity to observe and to get to know the patient as an individual. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). When a physician's treatment relationship with his or her patient provides greater knowledge about the patient's condition, the opinion is entitled to greater weight than that of an examining physician or a reviewing medical

expert without such knowledge. *Lester*, 81 F.3d at 830; *Smolen*, 80 F.3d at 1285. This proposition should not be blindly applied, however. Where there are competing opinions, the opinion of the source with the best information and greatest knowledge should receive the greatest weight.

Marshall contends Dr. Williams's opinion is entitled to controlling weight because he was her treating psychiatrist. The opinion of a treating physician can be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and consistent with the evidence in the record. *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007). An ALJ may reject a treating physician's opinion in favor of the conflicting opinion of another physician, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (quoting *Magallanes v. Bowen*, 881 F2d 747, 751 (9th Cir. 1989)).

The ALJ found Dr. Williams's opinion regarding Marshall's inability to maintain a work schedule without excessive absenteeism insufficiently supported by clinical findings in his treatment notes. Admin. R. 43. As described previously, Dr. Williams saw Marshall infrequently for medication management. His treatment notes reflect that his primary information came from Marshall's subjective report of her interim history between visits. His clinical findings were limited to mental status observations that she appeared anxious, hypervigilant, and manipulative, but had logical and linear thought processes without abnormal thought content and her cognitive functions were grossly intact. Admin. R. 577, 579, 708 ,711, 757, 772, 781. Dr. Williams indicated that Marshall's anxiety made contact with other people uncomfortable for her. Admin. R.

743, 747.   Nothing in his clinical findings, however, suggests that she would be unable to maintain a full time work schedule in an occupation that required little contact with others.   That portion of Dr. Williams's opinion was not well supported by clinical findings and was, therefore, not entitled to controlling weight.

In the absence of clinical findings to support the opinion, it is reasonable to infer that Dr. Williams premised his opinion instead on Marshall's subjective claims, which the ALJ properly found lacking in credibility.   Under such circumstances, the physician's opinion is no more reliable than the claims upon which it is based. *Tonapetyan*, 242 F.3d at 1149; *Fair v. Bowen*, 885 F.2d at 605.

The ALJ discounted Dr. Williams's opinion for the additional reason that his treatment notes reflected that Marshall was rarely, if ever, compliant with her prescribed medication regimen.   Admin. R. 43.   As a result, Dr. Williams had no basis to assess Marshall's functional capacity when she was compliant with treatment.   This is an additional reasonable basis for the ALJ to question the accuracy of Dr. Williams's opinion.   Dr. Williams appeared to attribute Marshall's difficulty with compliance to her unstable housing situation and environment.   Such unfortunate circumstances are not medically determinable impairments and are not a proper basis for a disability opinion.

In addition, the ALJ found that Dr. Williams minimized the noncompliance and manipulative attempts to obtain prescription benzodiazepines that appear in his treatment notes.   Admin. R. 43.   The ALJ could reasonably infer from this that Dr. Williams was advocating for his patient instead of giving an objective medical opinion of her functional capacity.

The ALJ gave greater weight to the reviewing psychological experts Kordell Kennemer, Psy.D. and David Sanford, Ph.D., and to the opinion of the medical expert, Sally Clayton, Ph.D., who testified at the administrative hearing. Admin. R. 42. The ALJ reasoned that these experts had greater knowledge of Marshall's psychological condition because they reviewed the entire record and did not rely predominantly on Marshall's subjective reports He found their opinions consistent with the evidence as a whole. Admin. R. 42. I find no error in the ALJ's evaluation of the medical opinions.

## IV.    Additional Limitations

Marshall contends the ALJ's RFC assessment failed to include limitations attributable to her moderate difficulties in concentration, persistence, or pace. "Concentration, persistence, or pace" is one of the four broad categories of function known as the "B Criteria." The B criteria categories are used to determine whether a claimant's impairments meet the severity requirement at step two of the disability determination process and whether the claimant's impairments satisfy the criteria for any of the presumptively disabling impairments listed in the regulations. Here, the ALJ found that Marshall had "moderate difficulties" in concentration, persistence, or pace. Admin. R. 26. The ALJ resolved steps two and three in Marshall's favor based, in part, on this finding.

The B criteria categories of function are too broad to be used in the RFC assessment. Instead, the ALJ must identify specific work-related activities that the claimant can and cannot do. Here, the ALJ found that, despite her mental impairments, including her moderate difficulties in concentration, persistence, or pace, Marshall remained capable of performing simple, routine, repetitive tasks at a low reasoning level

in a work environment with appropriate limitations on her interactions with others. Admin. R. 27.    Although she might lose concentration or be unable to persist at an adequate pace when doing complex tasks or when required to engage in interactions that increase her stress, the ALJ believed she could perform adequately within the limitations of her RFC.    Accordingly, I find the RFC assessment adequately reflected Marshall's limitations in concentration, persistence, or pace.    *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008) (RFC for simple, routine, repetitive work includes limitations in concentration, persistence, or pace).

Marshall also challenges the VE's testimony because the ALJ elicited her opinion with a hypothetical question that did not include additional limitations in concentration, persistence, or pace.    The ALJ elicited the VE's testimony with a hypothetical question that accurately reflected his assessment of Marshall's RFC.    Admin. R. 128.    The VE testified that jobs exist in the national economy that a person with Marshall's RFC can perform.    Admin. R. 128-129.    Because I find no error in the ALJ's RFC assessment, the hypothetical limitations posed to the VE were also free of error, and the VE's testimony satisfies the Commissioner's burden to show there are jobs that Marshall can perform. *Andrews v. Shalala*, 53 F.3d at 1043.

The ALJ was not required to include the additional hypothetical limitations suggested by Marshall's counsel which the ALJ found unsupported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Marshall's final claim is that the RFC did not reflect her symptoms of agoraphobia.    Medication management records from Coffee Creek Correctional Facility mention agoraphobia, but it does not appear in the diagnoses she received since she

allegedly became disabled.   Admin R. 413-21.   Marshall appears to argue for the first time on appeal that the ALJ should have considered her agoraphobic symptoms in formulating her RFC.

Marshall's argument cannot be sustained.   The record reflects nothing more than remote allusions to agoraphobia.   Marshall did not produce credible evidence of any functional limitations beyond those identified in the ALJ's RFC assessment.   The RFC assessment reflects all the functional limitations the ALJ found supported by the record and will not be disturbed.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this _2nd_ day of July, 2014.

Robert E. Jones
United States District Judge